IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ) | Bankruptcy No. 13-20868-CMB |
| ) | |
| RPP, LLC, ) | Chapter 11 |
| ) | |
|     Debtor. ) | |
| ) | |
| ROCK FERRONE and MARCIA FERRONE, ) | |
| ) | |
|     Movants, ) | |
| ) | |
|     v. ) | Related to Doc. Nos. 569 & 582 |
| ) | |
| RPP, LLC, THE TRIB TOTAL MEDIA, INC., ) | |
| NATALIE CARDIELLO, AS TRUSTEE OF ) | |
| RAP, LLC, MANAGEMENT SCIENCE ) | |
| ASSOCIATES, INC., AND THOMAS P. ) | |
| REILLY, P.C., ) | |
| ) | |
|     Respondents. ) | |

## MEMORANDUM OPINION

The matter before the Court is the *Amended Motion for Stay Pending Appeal* ("Motion") filed by Rock and Marcia Ferrone, pro se (hereinafter, the "Ferrones").[1] Responses opposing the Motion were filed by Natalie Lutz Cardiello, Esq., the Chapter 11 Trustee of the Bankruptcy Estate of Rock Airport of Pittsburgh, LLC; Trib Real Estate Company; Management Science Associates, Inc.; and Alaskan Property Management Company LLC. The Debtor, RPP, LLC, filed a response in support of the Motion. Upon consideration of the Motion, the responses

---

[1] The Court notes that the Ferrones first filed a *Motion for Stay Pending Appeal* on February 22, 2016. *See* Doc. No. 569. At oral argument, Mr. Ferrone advised the Court that the amended motion superseded the original motion. The Court has thoroughly considered all of the Ferrones' arguments in ruling on this matter.

1

thereto, and the arguments presented by the parties on March 10, 2016, this Court finds, for the reasons expressed herein, that the Motion must be denied.

Background and Procedural History

The Court writes primarily for the parties who are familiar with the extensive background and procedural history of the above-captioned bankruptcy case of RPP, LLC ("RPP"), the related bankruptcy case of Rock Airport of Pittsburgh, LLC ("Rock Airport"), and the adversary proceedings associated with these bankruptcy cases. In March of 2015, numerous matters were pending before the Court, and the parties sought judicial mediation to pursue a global settlement. Accordingly, on March 13, 2015, at the suggestion of the parties, this Court referred the pending matters to the Honorable Thomas P. Agresti for the purpose of mediation. Among these matters were the competing disclosure statements and plans filed in RPP's bankruptcy case by RPP and Trib Real Estate Company ("Trib"). The parties directed to participate in mediation included Rock Ferrone, the equity security holder of RPP.[2]

Following a great deal of preparation by the parties and the Mediation Court, the mediation, lasting over eleven hours, was conducted on August 17, 2015. The result was a settlement, the terms of which were documented on the record by the parties. On August 20, 2015, Judge Agresti entered the Final Judicial Mediation Consent Order ("Consent Order"), "incorporat[ing] by reference the consensual Order entered at approximately 10:45 P.M. following the on the record colloquy of the Parties with the Mediation Court at the conclusion of the Judicial Mediation." *See* Consent Order, Doc. No. 495. The Consent Order further provided as follows:

---

[2] The Court notes that, although Mr. Ferrone is the only individual identified on the List of Equity Security Holders filed with RPP's bankruptcy petition, both Mr. and Mrs. Ferrone participated in the mediation regarding the equity claim.

> The agreements and consensual finding of facts entered into by the Parties, and to which all Parties to the August 17th Judicial Mediation are bound pursuant to the Order entered into on the record at the conclusion of the Judicial Mediation ("Global Settlement"), are incorporated herein by reference as if fully set forth.

*Id.* Following the Consent Order, the transcript of the settlement ("August 17th Transcript") was filed on the docket. *See* Doc. No. 497. The Mediation Court then entered the Judicial Mediation Termination Order on August 28, 2015, incorporating the August 17th Transcript, which is identified as a material part of the Consent Order. *See* Doc. No. 498. **Neither the Consent Order nor the Judicial Mediation Termination Order was appealed.** Thus, mediation was successfully concluded to the satisfaction of all participating parties, or so it seemed.

As set forth within the August 17th Transcript, the settlement anticipated the filing of an agreed-upon plan of reorganization in RPP's bankruptcy case. In light of the settlement, on October 15, 2015, Trib filed the *Amended Plan of Reorganization of Trib Real Estate Company Dated October 15, 2015* ("Trib's Plan") along with a summary and disclosure statement. *See* Doc. Nos. 517, 518, and 519. Also on October 15, 2015, this Court held a status conference on all matters referred to mediation in order to begin implementation of the global settlement. At that time, it was confirmed that Trib's Plan replaced its previously filed plan and was intended to constitute the agreed-upon plan achieved through mediation. With respect to the plan previously filed by RPP ("RPP's Plan"), RPP asserted that it was not prepared to withdraw its plan as there were some undisclosed issues to resolve with respect to the settlement. Ultimately, on November 5, 2015, due to the questions raised regarding the terms of the settlement, the matter was submitted to Judge Agresti for the purpose of clarification and/or further mediation. *See* Doc. No. 530. The November 5, 2015 Order further requested a report from the Mediation Court with respect to its findings as to the status of the Consent Order if the matter(s) were not fully resolved.

3

On December 10, 2015, the Mediation Court held a conference in an attempt to resolve the issues that might affect the Consent Order. At that time, it became clear that the sole issue was the Ferrones' contention that the settlement included a "blanket security interest" in RPP's electrical power grid to secure the payment of their equity claim. The parties were provided with the opportunity to present their respective positions, and those arguments are set forth in a transcript. *See* December 10th Transcript, Doc. No. 545. Following the conference, the *Report of Mediation Court Regarding "Clarification Issues"* ("Mediation Report") was filed on January 12, 2016. *See* Doc. No. 553. Within the detailed Mediation Report, Judge Agresti set forth the arguments of the parties, provided a thorough analysis, and concluded that no clarification of the Consent Order appeared to be necessary; rather, the concerns raised by the Ferrones appeared to be in the nature of "buyers' remorse." As stated within the Mediation Report:

> Numerous times throughout the Consent Order Colloquy, representatives of The Trib Total Media made clear that the only payment source for the Ferrone equity claim, and the MSA claim for that matter, would be the Creditor Trust and contribution of monies left in the fund after payment from electric service users. On numerous occasions, Atty. Joseph Lawrence stated on Trib Media's behalf that the Ferrones would only be entitled to what was left in the "fund" when payment of their "estimated" $285,000 equity claim was ultimately considered. Mention of a security interest only came about during "eleventh hour" (literally) discussions of a "catastrophic loss" when "everyone leaves the system" due to such a loss. No support exists in the Consent Order Colloquy for a "blanket security interest" supporting "any" loss by the Ferrones or MSA, the only security interest going in favor of the Creditor Trust. Such a result would have obviated the numerous efforts made by the Parties to assure that the Ferrones understood the basis for payment of their equity claim during the course of the colloquy. If their "estimated" payment were "guaranteed" there would have been no need for this exercise.

*See id.* at 6 (internal citations omitted). With the filing of the Mediation Report, this Court prepared to go forward with status conferences on the pending matters on February 17, 2016.

Prior to the status conferences, upon review of the August 17th Transcript, the Consent Order, the Judicial Mediation Termination Order, the December 10th Transcript, and the

4

Mediation Report (collectively, the "Mediation Record"), this Court issued an Order directing RPP, through counsel, to appear on February 17, 2016, and show cause why RPP's Plan was not withdrawn based upon the global settlement, particularly with respect to the pursuit of an agreed-upon plan. The Order further contemplated dismissing and/or striking RPP's Plan if RPP did not withdraw it prior to the hearing. On February 15, 2016, RPP filed *Debtor's Response to Rule to Show Cause* questioning the enforceability of the settlement agreement. After an opportunity for all parties to be heard, this Court ruled on the record that, following a thorough review of the Mediation Record, a global settlement was achieved. The Mediation Report was adopted and incorporated into the ruling. Accordingly, RPP's failure to withdraw its plan violated the terms of settlement, and RPP's Plan was dismissed. *See* Doc. No. 561.

Despite the filing of the Mediation Report and the scheduling of the rule to show cause hearing approximately one month earlier, the day before the February 17, 2016 hearing, the Ferrones filed their *Motion for Order Enforcing Settlement Agreement, or in the Alternative, Setting Aside Agreement Due to No Meeting of the Minds* ("Motion to Enforce"). Based upon the ruling at the February 17, 2016 hearing, adopting the Mediation Report and enforcing the settlement agreement as set forth therein, the Motion to Enforce was denied as moot. *See* Doc. No. 564.

On February 22, 2016, the Ferrones filed a Notice of Appeal with respect to the Orders dismissing RPP's Plan and denying the Motion to Enforce as moot. In addition, the Ferrones filed their original motion seeking a stay pending appeal. The amended motion was filed on March 1, 2016. Of particular concern to the Ferrones appears to be any progress with respect to the Trib's Plan; however, given the global nature of the settlement, it is unclear how any matters could proceed in the event of a stay pending appeal. Responses were filed opposing the Ferrones'

5

request for a stay, and a hearing was held on March 10, 2016.[3] The matter is now ripe for decision.

## Applicable Standard

Pursuant to Fed.R.Bankr.P. 8007, a motion for stay of an order pending appeal is ordinarily presented to the bankruptcy court in the first instance. The Third Circuit recently clarified and provided guidance regarding the test to be applied by courts considering motions for stay pending appeal. *See In re Revel AC, Inc.*, 802 F.3d 558 (3d Cir. 2015). The four factors to be considered and balanced are as follows: (1) whether movant has made a strong showing of likelihood of success on the merits; (2) whether movant will suffer irreparable injury if a stay is not granted; (3) whether a stay will substantially injure the other parties to the proceeding; and (4) whether a stay is in the public interest. *Id.* at 568. The most significant among these factors are the movant's ability to demonstrate a likelihood of success (arguably the most important consideration) and irreparable harm in the event a stay is not granted. *Id.*

With respect to the first factor, "a sufficient degree of success for a strong showing exists if there is 'a reasonable chance, or probability, of winning.'" *Id.* at 568-69 (quoting *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir.2011) (en banc)). The strength of the case that a movant must demonstrate is determined by the "sliding-scale" approach, such that the court's assessment of the remaining factors will impact the degree of possibility of success that a movant must show. *See Revel*, 802 F.3d at 569. As to the second factor, the movant must show that irreparable injury is more than a mere possibility, rather it must be likely. *See id*. When these two factors are satisfied, the next step is to assess the harm to the party or parties opposing the

---

[3] Despite the duty of a debtor in possession to act on behalf of the bankruptcy estate and for the benefit of creditors, the Court notes that RPP filed a response in support of the Ferrones' Motion which appears to solely represent the interests of the Ferrones without any apparent consideration of the best interests of the bankruptcy estate and creditors.

stay and weigh the public interest. *See id.* The likely harm to the movant in the absence of a stay is weighed against the likely harm to the opponents if a stay is granted. *See id.* In summarizing the analysis to be applied, the Third Circuit provided:

> To sum up, all four stay factors are interconnected, and thus the analysis should proceed as follows. Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) *and* (b) will suffer irreparable harm absent a stay? If it has, we "balance the relative harms considering all four factors using a 'sliding scale' approach. However, if the movant does not make the requisite showings on either of these [first] two factors, the [ ] inquiry into the balance of harms [and the public interest] is unnecessary, and the stay should be denied without further analysis." *In re Forty–Eight Insulations*, 115 F.3d at 1300–01 (internal citation omitted). But depending on how strong a case the stay movant has on the merits, a stay is permissible even if the balance of harms and public interest weigh against holding a ruling in abeyance pending appeal.

*Id.* at 571. Accordingly, with the guidance of *Revel*, this Court considers the instant Motion.

## Analysis

In applying the analysis outlined in *Revel* to this case, the Court notes that the Ferrones did not specifically address the four factors set forth above in their Motion or in their oral argument. Instead, the Ferrones suggest that a stay is appropriate as there is a reasonable question with respect to the enforceability of the settlement agreement.[4] These arguments will be addressed under the first factor.

### Likelihood to Succeed on the Merits

Beginning with the Ferrones' likelihood to succeed, the Ferrones contend that the settlement is unenforceable or, in the alternative, that the plain meaning of the transcript supports the Ferrones' interpretation of the agreement. As a preliminary matter, the Court notes that the

---

[4] In the original motion requesting a stay, the Ferrones contended that the settlement could not be implemented until the Third Circuit ruled on the Ferrones' appeal of orders entered in Rock Airport's bankruptcy case. The Third Circuit rendered an Opinion in that matter, and Judgment was entered on February 22, 2016. As such, the argument was abandoned in the amended motion. At the hearing on March 10, 2016, this Court was advised, however, that the Ferrones subsequently sought rehearing in the Third Circuit.

7

circumstances of this mediation are unique. Unlike a typical mediation, the terms of this intensely negotiated settlement are available in the form of a transcript, which comprehensively sets forth the parties' agreement and removes any doubt regarding the parties' intent to be bound by those terms.

In dismissing RPP's Plan, the Court considered *Debtor's Response to Rule to Show Cause,* in which RPP contended that an evidentiary hearing was needed to determine the intent of the parties. In support, RPP cited to *In re BG Petroleum, LLC*, 525 B.R. 260 (Bankr.W.D.Pa. 2015). The facts of *BG Petroleum*, however, are distinguishable. The dispute that arose in that case was with respect to terms of payment which were not set forth on the mediation term sheet. *See id.* at 267. Ultimately, the court found that it did not need to resolve any ambiguity as the weight of the evidence supported the conclusion that that the gap in the term sheet was filled in by a subsequent document prepared by the parties. *See id.* at 272. Unlike *BG Petroleum*, there is no gap or ambiguity in the settlement here, and it is inappropriate to attempt to read excerpts of the transcript out of context as the Ferrones suggest in an effort to change the terms. The plain meaning of the settlement is clear from review of the August 17th Transcript, and the transcript does not support the Ferrones' interpretation.

To the extent the Ferrones challenge whether the parties possessed the requisite meeting of the minds to form a contract, that argument clearly fails. In a thorough and meticulous manner, the Mediation Court required that the parties set forth the terms of settlement on the record. A review of the transcript reveals, without a doubt, that the parties absolutely manifested the requisite intent to be bound by the terms of the settlement.

In questioning the settlement, the Ferrones also contend that the settlement was never approved in compliance with Fed.R.Bankr.P. 9019. This appears to be a belated concern raised

in the amended version of the Motion. The Court notes that the dispute with respect to terms of the settlement arose *at the first status conference following the settlement*. Thus, any implementation of the mediated resolution was stalled. Furthermore, following mediation, upon the filing of Trib's Plan, it appeared that full disclosure of the settlement to any parties in interest who did not participate in mediation (to the extent such parties exist) would be accomplished through the process of confirmation of the agreed-upon plan, presumably pursuant to 11 U.S.C. §1123(b)(3), which permits a plan to "provide for the settlement or adjustment of any claim or interest belonging to the debtor or to the estate[.]"Although the plan confirmation process achieves the goals of providing complete disclosure to all parties and review by the Court, *to be clear*, it does not provide the Ferrones, or any party to the mediation, with a renewed opportunity to challenge the settlement to which they are bound. The Ferrones' true concern appears to be regret regarding the settlement rather than whether there was compliance with Fed.R.Bankr.P. 9019.[5]

Based upon the unique circumstances of this case, the Ferrones failed to establish that they, as parties to the mediation, are not bound to the terms agreed upon at the mediation even pending an approval pursuant to Fed.R.Bankr.P. 9019 and/or plan confirmation. Significantly, it

---

[5] The procedure for court approval of a settlement set forth in Fed.R.Bankr.P. 9019 is for the purpose of full disclosure. *See In re Martin*, 91 F.3d 389, 394-95 (3d Cir. 1996). As set forth in *Martin*, when the compromise of a claim is before a court, the process for approval "requires a bankruptcy judge to assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Id.* at 393. Notably, although the Ferrones cite to Fed.R.Bankr.P. 9019, they fail to identify how their belated concern implicates any of the *Martin* factors, which assess the benefit of the settlement to the estate: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *See id.* In fact, the complexity of the litigation; the avoidance of further delay, which would be significant based upon the nature of the disputes; and the interests of creditors, who were represented and agreed to the global settlement, overwhelmingly support approval. This Court is extremely familiar with the record of this case and considered these factors when reviewing the Mediation Record. The settlement clearly satisfies the *Martin* factors. It appears that the Ferrones are grasping at straws to undo this global settlement.

is apparent from the August 17th Transcript that all parties were made aware of the binding nature of the settlement at the conclusion of mediation:

> THE COURT: Okay. So this is the framework in which we are going to operate going forward. And I am going to so order all of the foregoing. **So now we have a Court Order approving the settlement.** The settlement is resolved. I am not going to belabor it much more. Everybody wants to get home, but I would like to say thank you to all of you. You did a wonderful job. There were a lot of highs and lows. I told you there would be some animated moments and there were and we got through it and this isn't the way it looked, about 6 hours ago, but it's great to have a resolution and we all should be given great credit for that.
> And I am sure you made Judge Bohm very happy. Okay. So I'll issue an Order that formalizes -- written Order, but the Order is as of right now this moment on the record. I'll probably just incorporate by reference, everything we went through.

*See* August 17th Transcript, at 67 (emphasis added). Further, following the mediation, the Consent Order was entered, which was not appealed.

In addition, it appears that all relevant parties participated in mediation when the global settlement was achieved, leaving only the question of whether the agreed-upon plan should be confirmed. Furthermore, the fact that the parties to the settlement are bound does not result in automatic confirmation of the Trib's Plan. The disclosure statement is scheduled for a hearing, and Trib's Plan will proceed as any other plan.

Finally, the Ferrones' contention that the settlement agreement is illusory appears to be nothing more than a red herring to undermine the entire, heavily negotiated settlement. The Ferrones assert that the agreement is illusory as it fails to provide them with guaranteed consideration. As stated by Judge Agresti in the Mediation Report, concluding that no support exists for a "blanket security interest" supporting "any" loss by the Ferrones:

> Such a result would have obviated the numerous efforts made by the Parties to assure that the Ferrones understood the basis for payment of their equity claim during the course of the colloquy. If their "estimated" payment were "guaranteed" there would have been no need for this exercise.

*See* Mediation Report, at 6. As set forth in detail in the August 17th Transcript, funding the creditor trust (and accordingly payment of the equity claim) is dependent upon the monthly electrical bills of the members of RPP. *See* August 17th Transcript, at 7-8. The August 17th Transcript and Exhibit 2 to the Consent Order reveal that there was complete transparency as to the method by which the creditor trust would be funded.[6] The Ferrones also fail to acknowledge the initial, substantial deposits to be made into the creditor trust pursuant to the settlement. Furthermore, the Ferrones' contention that the settlement is illusory ignores other items negotiated by the Ferrones, such as the guaranteed $83,000.00 payment on the contested claim of K-Cor, Inc. ("K-Cor"), an entity of which Mr. Ferrone is the principal. There is no basis for the conclusion that the settlement is illusory.

Furthermore, to the extent the Ferrones argue that the agreement is made illusory as all of the parties could simply choose to purchase their electricity elsewhere, the contention is misleading, especially given the record of this case. It has not proven a simple task to walk away from the electrical grid and connect to a new source of electricity. Management Science Associates, Inc. ("MSA") is a prime example, as it took years for MSA to transition its electrical usage from RPP to West Penn Power.[7] That transition involved much litigation, the request for an easement, extensive planning and construction, and large sums of money to accomplish. The record of this case undermines the Ferrones' belated concerns.

---

[6] From a review of the August 17th Transcript, it appears that MSA will withdraw its claim pursuant to the settlement due to the recent ruling by the Third Circuit. *See* August 17th Transcript, at 46. Accordingly, whereas the creditor trust was a potential source of funding for MSA's claim in addition to the equity claim of the Ferrones, funding appears to be even more assured to the Ferrones. *See id* at 8. The Court notes, however, that the impact of the Ferrones' request for rehearing in the Third Circuit is unclear at this time.

[7] In this Court's Memorandum Opinion dated December 3, 2013, the Court observed that in 2008 a consent order was entered in state court proceedings requiring MSA to shift its electrical usage from RPP to Allegheny Power (now West Penn Power). *See* Memorandum Opinion, 2-3. Based on the record, it is believed that the transition was accomplished only several months ago.

Based on the foregoing, the Ferrones' likelihood of success does not rise even to the level of negligible and does not support granting a stay pending their appeal.

Irreparable Harm to Movants Absent a Stay

Significantly, the Ferrones also failed to demonstrate that they will suffer irreparable harm absent a stay. The Ferrones particularly take issue with the Court moving forward with Trib's Plan. Processing that plan is in its infancy. At this time, the Court has not yet held a hearing on the disclosure statement. In fact, a hearing on the disclosure statement will not be held until April 14, 2016. With respect to confirmation, the Court cannot speculate at this time when a hearing on that issue may occur. Any potential harm does not appear imminent. Further, whether Trib's Plan appropriately implements the settlement has not been determined. Should a party to the settlement contend that the Trib's Plan fails in that regard, an appropriate objection can be filed.

In addition, the Ferrones suggest that *if* the Trib's Plan is confirmed and *if* the members of the consortium immediately abandon the electrical grid for another power source, then the Ferrones may receive nothing. The Ferrones' suggestion appears to be without foundation and implausible under the circumstances for the reasons set forth *supra* addressing the Ferrones' contentions that the settlement is illusory. Furthermore, as the alleged harm to the Ferrones is the absence of a guarantee that they will receive $285,000.00 under the plan, it is noteworthy that the potential harm asserted is a purely economic injury, which typically does not satisfy the irreparable harm requirement. *See Revel*, 802 F.3d at 572. Accordingly, the Ferrones failed to demonstrate the likelihood of irreparable harm to them in the event a stay is denied.

Therefore, as the Ferrones did not make the requisite showings on either of these first two factors, an inquiry into the remaining two factors is unnecessary. Notwithstanding the foregoing,

the Court will briefly address the final two factors as they too support the conclusion that a stay is not appropriate under the circumstances.

### Harm to the Other Parties in the Event of a Stay

In balancing the harm to the other parties in the event a stay is granted, this Court notes the considerable amount of time and effort dedicated to the mediation of these matters in order to obtain a successful result. The various pending matters were referred to mediation in March of 2015, which concluded approximately five months later. With major contingencies appearing to be resolved by the Third Circuit's ruling on February 22, 2016, this bankruptcy case, which commenced in 2013, is finally in a posture to proceed with a plan of reorganization. It appears that the stay requested by the Ferrones would halt any progress in this case for an undetermined amount of time to the detriment of the parties who diligently mediated and achieved a settlement.

Significantly, the other parties have relied upon the settlement and taken action in compliance with the agreement. Notably, the Trib expended time and resources to prepare a plan to implement the settlement. In addition, the Chapter 11 Trustee of Rock Airport withdrew her objection to the claim of K-Cor with prejudice in the bankruptcy case of Rock Airport in compliance with the settlement agreement.

There is significant potential for harm as the Ferrones question the entirety of the settlement, potentially reviving a dispute over the ownership of the grid and the litigation of large claims, which may threaten a successful reorganization in this case. For the Trib, a stay would prolong the uncertainty regarding the reliability of its power source.

In addition, with the recent ruling by the Third Circuit and the global nature of the settlement, the bankruptcy case of Rock Airport, which commenced in 2009, is finally nearing conclusion. A stay will undoubtedly prevent entry of a final decree in that case. Accordingly, the

speculative harm to the Ferrones if this case proceeds does not outweigh the harm to other parties in the event a stay is granted.

### Public Interest

As a matter of public policy, settlements are encouraged. *See BG Petroleum*, 525 B.R. at 270. Permitting a party to bring this case to a grinding halt while creating additional litigation to contest a point that is clear in the settlement undermines the mediation program and the promotion of amicable resolutions in general in this Court. In addition, the final resolution of these matters is significant and impacts others who have not been active participants in this case. As RPP is a source of electrical power for those at the business park, it is in the public interest for this case to proceed in order to provide a reliable source of electricity for those who rely on it. Thus, this factor also weighs against granting a stay.

### Conclusion

Therefore, based upon the foregoing, this Court finds that the Ferrones failed to meet their burden to obtain a stay pending appeal. Accordingly, their Motion must be denied. An Order will be entered consistent with this Memorandum Opinion.

Dated: March 16, 2016                                   /s/ Carlota M. Böhm
                                                        Carlota M. Böhm
                                                        United States Bankruptcy Judge

**MAIL TO:**

Office of the United States Trustee

Kirk B. Burkley, Esq. and Daniel R. Schimizzi, Esq.

Natalie Lutz Cardiello, Esq.

Christopher J. Azzara, Esq.

Rodger L. Puz, Esq. and Gregory C. Michaels, Esq.

Thomas E. Reilly, Esq.

Elliott J. Schuchardt, Esq.

Rock and Marcia Ferrone
1170 Industrial Boulevard
New Kensington, PA 15068

FILED
3/16/16 2:00 pm
CLERK
U.S. BANKRUPTCY
COURT - PGH